**MARTIN TIRE COMPANY,**
Plaintiff,

v.

**UNITED STATES OF AMERICA,**
Defendant.

**Civ. No. 2497J.**

United States District Court,
S. D. Florida, Jacksonville Division.

Feb. 21, 1955.

Hill & Frazier, Jacksonville, Fla., for plaintiff.

James L. Guilmartin, U. S. Atty., Miami, Fla., Edith House, Asst. U. S. Atty., Jacksonville, Fla., Fred S. Gilbert, Special Asst. to the Atty. Gen., for the United States.

SIMPSON, District Judge.

After trial and submission before the Court of all questions of fact and law, the Court makes the following:

### Findings of Fact

1. That at all times herein mentioned the Plaintiff was a corporation organized and existing under the laws of the State of Florida, with principal office at Jacksonville, Florida.

2. That this action is one to recover a manufacturers' excise tax claimed to have been erroneously and illegally assessed and collected without authority under the Internal Revenue Laws of the United States, pursuant to the authority conferred to sue under Section 1346(a)(1) of Title 28 of the United States Code.

3. That the question involved herein is one arising under the laws of the United States providing for internal revenue, and specifically under Section 3403(c) of the Internal Revenue Code of 1939, 26 U.S.C.

4. That Martin Tire Company, as one of the several divisions of its automobile tire and battery business, repairs or reconditions used automobile and truck batteries for resale. This, it also did, during the period of November, 1948, to August, 1952, inclusive.

5. That prior to May 1, 1950, an agent of the Bureau of Internal Revenue informed the plaintiff that it was liable

for the manufacturers' excise tax on the sale of repaired or reconditioned automobile storage batteries, and demand was made on the plaintiff that it file manufacturers' excise tax returns (Form 728) and pay the manufacturers' excise tax at the rate prescribed by Section 3403(c) as amended on the gross sales reported therein; that in accordance with said demand, the plaintiff herein filed monthly excise tax returns and paid to the then Collector of Internal Revenue, District of Florida, manufacturers' excise tax on the gross sales of all repaired and reconditioned automobile storage batteries sold by it; that said manufacturers' excise tax returns were filed for each monthly period and the tax paid thereon on the dates and in the amounts as follows:

| Taxable Period | Date of Payment | Tax Paid |
| --- | --- | --- |
| November 1948 through April 1950 | June 2, 1950 | $779.51 |
| May 1950 | June 30, 1950 | 76.78 |
| June 1950 | July 28, 1950 | 89.18 |
| July 1950 | August 16, 1950 | 100.53 |
| August 1950 | September 14, 1950 | 88.31 |
| September 1950 | October 16, 1950 | 80.48 |
| October 1950 | November 14, 1950 | 69.92 |
| November 1950 | December 14, 1950 | 65.12 |
| December 1950 | January 18, 1951 | 58.79 |
| January 1951 | February 15, 1951 | 61.70 |
| February 1951 | March 20, 1951 | 56.00 |
| March 1951 | April 13, 1951 | 52.13 |
| April 1951 | May 17, 1951 | 56.46 |
| May 1951 | June 13, 1951 | 79.23 |
| June 1951 | July 16, 1951 | 84.87 |
| July 1951 | August 15, 1951 | 101.89 |
| August 1951 | September 13, 1951 | 91.95 |
| September 1951 | October 16, 1951 | 80.35 |
| October 1951 | November 16, 1951 | 80.93 |
| November 1951 | December 14, 1951 | 82.20 |
| December 1951 | January 16, 1952 | 173.66 |
| January 1952 | February 20, 1952 | 139.04 |
| February 1952 | March 25, 1952 | 84.90 |
| March 1952 | April 22, 1952 | 68.02 |
| April 1952 | May 21, 1952 | 63.18 |
| May 1952 | June 13, 1952 | 83.44 |
| June 1952 | July 16, 1952 | 141.38 |
| July 1952 | August 15, 1952 | 120.48 |
| August 1952 | September 16, 1952 | 128.08 |

6. That plaintiff herein on September 19, 1952 timely filed with the then Collector of Internal Revenue, District of Florida, a claim for refund of the manufacturers' excise tax paid by it for the period November 1948 through August 1952, amounting to $3,239.30, on official Form 843, according to the provisions of law in that regard and regulations of the Secretary of the Treasury.

7. That by letter dated February 10, 1953, the Commissioner of Internal Revenue disallowed and rejected plaintiff's claim for refund of manufacturers' excise tax in the sum of $3,239.30.

8. That the process employed by plaintiff in repairing and reconditioning its used automobile batteries involved the following essential steps:

Used batteries are acquired by the company from peddlers of such merchandise, or are acquired in exchange transactions. After a sufficient number of used batteries have been secured, they are placed in the sun to soften the roofing tar used to seal the top of the battery and the case. If the outside temperature is insufficient to soften the tar, a torch is applied for this purpose.

Next, an employee cuts the lead strap, located on the top of the case, connecting the cells of the battery, with a pair of bolt cutters. Starting with an end cell, each cell of the battery is removed and inspected; and if the plates of all three cells are found to be in usable and serviceable condition, except for defective insulators, the battery is thereafter reconditioned or repaired. However, if any one or more of the cells of a particular battery are found to be unserviceable because of defective or worn-out lead plates, the battery is not reconditioned or repaired, but sold as scrap. In some instances, the case of a battery going to scrap may be saved and used in reconditioning other used batteries.

The cases of the batteries selected for reconditioning or repairing are washed with hose and water and surplus lead is removed from the lead plates of each cell with a brush. The next step in the process involves inserting new wooden or plastic insulators between the lead plates in each of the three battery cells. The three newly insulated cells are then replaced in a used case of appropriate size and resealed with roofing tar.

The lead straps connecting the cells and cable terminals are then replaced. The exterior of the batteries is painted with an inexpensive grade of asphalt paint. Lastly, the battery is again sealed with roofing tar. A new supply of battery acid and water is applied and the battery recharged.

9. The only new materials used in the process are the wooden or plastic insulators, roofing tar, battery acid and asphalt paint, all of which are either taxpaid or tax-exempt articles. The cell-connecting straps and cable terminals are remolded from used lead reclaimed from other batteries by use of a simple hand mold.

10. The reconditioning process employed by Martin Tire Company does not constitute the manufacture or production of automobile parts or accessories within the meaning of Section 3403(c) as amended. Said reconditioning process permitted the used battery in question to serve the regular useful life for which originally designed by the manufacturer thereof. No new or rebuilt lead plates were installed in these rebuilt batteries.

11. That Martin Tire Company guaranteed its reconditioned batteries for a period of six months. Its minimum guarantee on the least expensive new battery sold was twelve months.

12. That the used batteries were sold at the following prices, depending upon the size thereof:

$4.95; $5.95; $6.95 and $7.95, including Florida Sales Tax. These prices averaged approximately 50 per cent of the selling price of comparable size new batteries sold by plaintiff during the period herein mentioned. The prices quoted by plaintiff for its used batteries were on an exchange basis, whereby the purchaser was obligated to exchange his old battery in order to secure a reconditioned battery at the prices quoted.

13. That approximately 90 per cent of plaintiff's sales of reconditioned batteries were made to used car dealers operating in and around the Jacksonville trade area.

14. That at no time during the period herein mentioned did plaintiff sell its used batteries under any trade name. In the reconditioning process, no effort was made to obliterate or change the trade name placed upon the battery case by the original manufacturer thereof.

15. That Section 3403(c) of the Internal Revenue Code of 1939 does not impose a tax on the sale of reconditioned or repaired automobile storage batter-

ies; where such repairs are accomplished with the use of taxpaid or taxfree replacement parts.

16. That all parts purchased by plaintiff for use in repairing or reconditioning used automobile storage batteries sold by it were purchased with the manufacturers' excise tax paid, where same was applicable.

17. That the plaintiff did not include the tax here in question in the price of the article with respect to which it was imposed or did not collect the amount of the tax from the vendee, and that the said manufacturers' tax was not billed separately to its customers, was not added to the sales invoice, and during the period in question, prices were not raised to include any tax liability which might have existed; and the plaintiff absorbed said tax as a cost of operation, and paid same out of its profits.

18. During the questioned period, the price paid or allowed in trade for used batteries required by plaintiff varied, but averaged about $2.00 to $2.50 per battery. Without repair, the used batteries acquired had no commercial value as automobile parts. About 90 per cent of those acquired were junked and the remaining 10 per cent were repaired or reconditioned in the manner outlined in Paragraph 8 above. The prime basis for selection for repair was that the lead plates in each cell be in good condition. One or more cells containing defective or worn-out lead plates caused the scrapping of the battery. These rejected batteries could have been placed in serviceable condition by replacement of the lead plates.

19. Plaintiff's claim does not exceed the sum of $10,000.

### Conclusions of Law

1. Plaintiff's operation consisted of reconditioning as distinguished from manufacture, production, or re-building of storage batteries.

2. The sale of such parts is not taxable under Section 3403(c) of the Internal Revenue Code of 1939.

3. While Revenue Ruling 54–329, I. R.B. 1954–33, 12 was not published until after the period involved, it is cited to me as bearing on the construction to be placed on Section 3403(c). The example given in said ruling under the definition of the term rebuilding of, "(a) rebuilt batteries," is confusing, when attempted to be applied to the facts in this case. My conclusion is that the operation here used is not such a major operation as machining, reboring, or rewinding. In my judgment, rebuilt batteries are erroneously included as an example in the ruling. It may well be that a process of replacing worn lead plates (the main functioning part in a storage battery) would properly be considered manufacture and thus come under the Act. However, this question is not before me and should not be passed upon. I do hold that the operation here involved is a reconditioning operation and is hence non-taxable.

4. Reference is made to Finding of Fact No. 17 (above). This finding shows establishment by the plaintiff of the prerequisites to recovery under Section 3443 (d) of the Internal Revenue Code of 1939.

5. The parties by their respective counsel, have stipulated that the correct principal amount to be refunded, in the event of plaintiff's recovery, is the sum of $3,238.51 (rather than $3,239.30, the amount of plaintiff's claim for refund, filed September 19, 1952). The plaintiff is therefore entitled to judgment in the principal amount of $3,238.51 with interest at the rate of 6% per annum on the said $3,238.51 from the date of the payment of each installment thereof to a date preceding the date of the refund check by not more than 30 days.